# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYDIA BUTTERFIELD, | : |
| | : CIVIL ACTION |
| Plaintiff, | : |
| | : |
| v. | : |
| | : NO. 06-0603 |
| MICHAEL J. ASTRUE, | : |
| Commissioner of the Social Security | : |
| Administration, | : |
| | : |
| Defendant. | : |

## MEMORANDUM

BUCKWALTER, S. J.                                                                                                   October 12, 2010

Currently before the Court are Plaintiff Lydia Butterfields's Objections to the Report and Recommendation of United States Magistrate Judge Timothy R. Rice. For the reasons set forth below, the Objections are denied.

## I. PROCEDURAL HISTORY

On July 12, 2002, fifty-five year old Plaintiff Lydia Butterfield filed for Disability Insurance Benefits ("DIB"), pursuant to Title II of the Social Security Act, 42 U.S.C. § 301, *et seq.*, alleging disability since February 6, 2002. The state agency denied her claim and, following Plaintiff's timely request for review, an administrative hearing was held before Administrative Law Judge ("ALJ") Diane C. Moskal. ALJ Moskal denied benefits in a decision dated August 11, 2003, and the Appeals Council subsequently rejected Plaintiff's request for review. Plaintiff then initiated a civil action in this Court, which reversed the decision of the Commissioner of Social Security and

remanded the case, pursuant to sentence four of 42 U.S.C. § 405(g),[1] on three grounds: (1) failure to include Plaintiff's mild limitation in concentration, persistence, or pace in the residual functional capacity assessment ("RFC"); (2) failure to pose a hypothetical question to the vocational expert ("VE") that included Plaintiff's mental impairment; and (3) failure to specifically address Plaintiff's credibility.

Following a second hearing on June 22, 2005, at which time both Plaintiff and a VE testified, ALJ Moskal denied Plaintiff's claims via a decision dated July 18, 2005. Upon a second appeal to federal court, however, Defendant requested remand because portions of the recording of the second hearing were inaudible. Accordingly, this Court remanded the case, on April 10, 2005, pursuant to sentence six of 42 U.S.C. § 405(g).[2]

---

[1] Sentence four of 42 U.S.C. § 405(g) provides that, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

[2] Sentence six of 42 U.S.C. § 405(g) states as follows:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

A new ALJ, Paula F. Garrety, held a third administrative hearing on June 12, 2007. By way of decision dated September 17, 2007, ALJ Garrety denied the claims, making explicit findings under the five-step sequential analysis codified in 20 C.F.R. § 404.1520. First, the ALJ determined that although Plaintiff did not engage in substantial gainful activity either from the alleged onset of her disability through 2005 or since March 2007, Plaintiff had engaged in substantial gainful activity from 2005 through March 2007 by caring for her five great-grandchildren. (R. 23.)[3] Second, the ALJ found that Plaintiff had severe impairments in the form of a chronic lumbar strain/sprain status post injury in 2002, together with multiple non-severe impairments, as follows: depression, left elbow impairment, left knee impairment, and left foot tenosynovitis. (Id.) The ALJ noted a significant gap in treatment for physical pain from 2002 to 2005, and credited the report of consultative examiner Dr. Stanton Bree, which revealed that Plaintiff had no functional limitations. (Id.) As to Plaintiff's mental impairments, the ALJ acknowledged the previous ALJ's findings, reviewed Plaintiff's mental health evaluations, and considered Plaintiff's testimony, prior to reaching her ultimate determination that Plaintiff had only a mild limitation on concentration, persistence, or pace. (R. 24-27.) The ALJ went on to partially credit Plaintiff's testimony about the limitations caused by her medically determinable mental impairments, but found Plaintiff's statements concerning the intensity, persistence, and limiting effects of these impairments not entirely credible. (R. 26-27.) The ALJ offered no discussion of the testimony by Plaintiff's mother or daughter. Third, the ALJ declined to find that Plaintiff's impairments or combination thereof met or medically equaled one of the Listing of Impairments in Appendix 1, Subpart P, Part 202 of 20 C.F.R. (R. 28.) Fourth, the ALJ concluded that Plaintiff had the residual functional capacity to

---

42 U.S.C. § 405(g).

[3] The Court uses "R. [page number]" to reference the administrative record in this matter.

perform light work that would accommodate mild deficits in concentration, persistence, or pace, secondary to a mild cognitive impairment. (R. 31.) Finally, based on the testimony of the VE, who found that Plaintiff could perform past relevant work as a housekeeper, the ALJ determined that Plaintiff had not been under a disability from February 6, 2002 through the date of the decision. (Id.) Accordingly, she declined the request for benefits. (Id.)

Plaintiff again sought review from this Court. On July 15, 2010, United States Magistrate Judge Timothy R. Rice issued a Report and Recommendation ("R&R") suggesting that the case again be remanded to Defendant for further review. Specifically, Judge Rice found no merit to Plaintiff's allegation that the ALJ failed to adjudicate her claim *de novo*, as required. Moreover, Judge Rice found substantial evidence to support the ALJ's findings that: (1) Plaintiff engaged in substantial gainful activity as a babysitter from 2005 through March 2007; (2) Plaintiff did not have a demonstrable visual impairment of glaucoma and bilateral cataracts; (3) the medical opinions from Plaintiff's treating providers were not entitled to significant weight; (4) Plaintiff's testimony was not entirely credible; and (5) Plaintiff had an RFC to perform light work, tempered by mild deficits in concentration, persistence, and pace. Nonetheless, Judge Rice determined that the ALJ had erred by failing to address the testimony of Plaintiff's daughter, Parthenia Parker, and the undated letter from Plaintiff's mother, Charlotte Easton.

Plaintiff now raises four Objections to the R&R: (1) the ALJ's finding that Plaintiff engaged in substantial gainful activity from 2005 through March 2007 is not supported by substantial evidence; (2) the ALJ erred by failing to adjudicate the claim *de novo*; (3) the ALJ erred by failing to consider all of Plaintiff's impairments; and (4) the ALJ erred by failing to provide a legally acceptable explanation for rejecting evidence favorable to Plaintiff's claim. (Pl.'s Objections 3-16.)

4

## II. STANDARD OF REVIEW[4]

When a party makes a timely and specific objection to a portion of a report and recommendation by a United States Magistrate Judge, the district court is obliged to engage in *de novo* review of the issues raised on objection. 28 U.S.C. § 636(b)(1); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In so doing, the court may "accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1). The court may also, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations. See United States v. Raddatz, 447 U.S. 667, 676 (1980).

The Court's review of an ALJ's findings of fact, however, is limited to determining whether or not substantial evidence exists in the record to support the Commissioner's decision. Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). Stated differently, "[t]his Court is bound by the ALJ's findings of fact if they are supported by substantial evidence on the record." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). "Substantial evidence 'does not mean a large or considerable amount of evidence but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir.1999) (quoting Pierce v. Underwood, 487 U.S. 552 (1988)).

## III. DISCUSSION

### A. Whether the ALJ Erred in Either Finding that Plaintiff Engaged in Substantial Gainful Activity from 2005 Through March 2007 or Failing to Consider All of Plaintiff's Impairments (Objection Nos. 1 and 3)

Plaintiff's first and third Objections allege, respectively, that: (1) the ALJ erred in finding that Plaintiff engaged in substantial gainful activity from 2005 through March 2007 and (2) the ALJ

---

[4] Plaintiff's medical history and the five-step legal framework for assessing a disability claim were adequately summarized by the Magistrate Judge. In lieu of repeating that discussion, the Court incorporates by reference those portions of the R&R into this Opinion.

failed to consider all of Plaintiff's impairments.  In support of each of these Objections, however, Plaintiff relies solely on her argument as presented in her previous briefing to the Magistrate Judge, without any amplification of the argument or indication of why the R&R's reasoning was flawed.

"To obtain *de novo* determination of a magistrate's findings by a district court, 28 U.S.C. § 636(b)(1) requires both timely and specific objections to the report."  Goney v. Clark, 749 F.2d 5, 6 (3d Cir. 1984).  Pursuant to this statute, the district court must "make a de novo determination of those ***portions*** of the report or ***specified*** proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1) (emphasis added).  Providing complete *de novo* review where the objections are general in nature and lack the specificity required by § 636(b)(1) would "undermine the efficiency the magistrate system was meant to contribute to the judicial process."  Id. at 7.  Thus, if objections to a Report "merely reiterate arguments previously raised before a magistrate judge, *de novo* review is not required."  Palmer v. Astrue, No. CIV.A.09-820, 2010 WL 1254266, at *2 (E.D. Pa. Mar. 31, 2010); see also Riley v. Barnhart, No. CIV.A.05-5731, 2010 WL 1186314, at *2 (E.D. Pa. Mar. 25, 2010) (holding that '[i]nasmuch as Plaintiff herein has failed to ' . . . identify specific errors in the magistrate judge's analysis without simply rehashing arguments already raised to the magistrate judge,' he is not entitled to further review of these issues"); Moran v. Astrue, No. CIV.A.08-2133, 2009 WL 3541001, at *3 (E.D. Pa. Oct. 30, 2009) (noting that an objecting party must do more than "simply rehash[] arguments already raised to the magistrate judge" to obtain *de novo* review).

Plaintiff's Objection No. 1 states, in its entirety, that "[t]he R&R rules that substantial evidence supports the ALJ's finding that Plaintiff engaged in substantial gainful activity between 2005 and March 2007. . . . Plaintiff objects to this ruling for the reasons stated in her previous filings."  (Pl.'s Objections 3 (internal citations omitted).)  Similarly, Objection No. 3 states that,

"Plaintiff argued that the ALJ erred by failing to consider all of Plaintiff's impairments. In particular, she argued that the ALJ erred by failing to address Plaintiff's visual impairment. The R&R rejects this claim. Plaintiff objects to this ruling for the reasons stated in her previous filings." (Id. at 15 (internal citations omitted).) Because such arguments fail to contain the specificity required by 28 U.S.C. § 636(b)(1) and simply rehash arguments already raised to the Magistrate Judge, this Court does not grant them *de novo* review. Moreover, upon general consideration of the portions of the R&R addressing such Objections, the Court finds no clear error or manifest injustice in the Magistrate Judge's conclusions. See Bohovich v. Astrue, No. CIV.A.06-1710, 2008 WL 416269, at *2 (M.D. Pa. Feb. 13, 2008) (noting that portions of an R&R that are not the subject of specific objections should, at minimum, be reviewed for clear error or manifest injustice). Accordingly, Objection Nos. 1 and 3 are overruled.

### B. Whether the ALJ Erred by Failing to Adjudicate the Claim *De Novo* (Objection No. 2)

Plaintiff next objects to the Magistrate Judge's finding of no error in the ALJ's failure to consider her social security application *de novo*. By way of background, and as set forth above, the August 11, 2003 ALJ decision was remanded for a new hearing and decision to: (1) include Plaintiff's mild limitation in concentration, persistence, or pace in the residual functional capacity assessment ("RFC"); (2) pose a hypothetical question to the vocational expert ("VE") that included Plaintiff's mental impairment; and (3) specifically address Plaintiff's credibility. (R. 20 n.1.) Although the June 22, 2005 hearing was held to address those issues, the opinion ensuing from those proceedings was remanded due to the inaudibility of the recording. (Id.) Thereafter, a third hearing took place on June 12, 2007 to develop the aforementioned issues *de novo*. (Id.) During that hearing, the ALJ expressly discussed the 2003 finding – left undisturbed by the District Court –

that Plaintiff had a mild limitation in concentration, persistence, or pace. The subsequent opinion stated as follows:

> As previously noted, the Court upheld the ALJ's finding that the claimant's mental impairment did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and was, therefore, non-severe. Specifically, the Court upheld the ALJ's finding that the claimant's mental impairment resulted in only mild limitation of concentration, persistence or pace. This determination cannot be disturbed, but the additional evidence of record received after this finding was initially made must be considered to determine whether there has been any change in the claimant's functional abilities/limitations.

(R. 24.) Plaintiff now argues that the ALJ erroneously "ruled that she was precluded from considering any new evidence in connection with previously decided issues." (Pl.'s Objections 4.)

Plaintiff's position is mistaken on two levels. First, as set forth by the Social Security Hearing, Appeals and Litigation Law Manual ("HALLEX"),

> If a court remands a case to the Commissioner of Social Security, and the Appeals Council subsequently remands the case to an ALJ for further proceedings and a new decision, the Appeals Council will generally vacate the final decision of the Commissioner that the court remanded. When the Appeals Council vacates a final decision of the Commissioner, the ALJ must consider **all pertinent issues** *de novo*. For initial entitlement cases, vacating a final decision reactivates the application. Accordingly, the ALJ must decide the remanded issues through the date of the new hearing decision or through the date that insured status expired, because the prospective life of the application will continue until the ALJ issues a final decision following the court remand.

Administrative Law Judge Decisions in Court Remand Cases, SOCIAL SECURITY ADMINISTRATION, HEARING APPEALS & LITIG. LAW MANUAL, at § I-2-8-18, 1993 WL 643058 (S.S.A. 2006) (emphasis added). Interpreting this language, multiple courts have noted that "[i]nclusion of the word 'pertinent' in the manual is an indication that a case may be remanded for adjudication of only the particular steps in the inquiry which are disputed on appeal." Gomez v. Comm'r. of Soc. Sec. No. CIV.A.08-4499, 2009 WL 2222797, at *7 (D.N.J. July 22, 2009); see also Calderon v. Astrue,

683 F. Supp. 2d 273, 277 (E.D.N.Y. 2010). Thus, where there is no showing that a ruling at a particular step is erroneous, "there is no precedent compelling [the] [c]ourt to remand all five steps [which would] simply require the parties to rehash arguments and make the court spend further resources simply to give the Commissioner a chance to relitigate [the] case." Gomez, 2009 WL 222297, at *7; see also 20 C.F.R. § 404.977(b) ("The [ALJ] shall take any action that is ordered by the Appeals Council and *may* take any additional action that is not inconsistent with the Appeals Council's remand order." (emphasis added)).

Given the above jurisprudence and the procedural history of the present matter, the Court finds no legal merit to Plaintiff's argument. Plaintiff has cited to no law establishing that a remand order, particularly one that sets forth pertinent issues to be addressed, requires that an entire social security application be considered *de novo*. Rather, the HALLEX states only that when a final decision is vacated, "the ALJ must consider all *pertinent* issues *de novo*." HALLEX § I-2-8-18, 1993 WL 643058 (emphasis added). Absent either a remand order flagging the issue or some other showing by Plaintiff that the ALJ's finding of a mild limitation in concentration, persistence, or pace was erroneous, the ALJ had no legal obligation to engage in *de novo* relitigation of this matter.

Second – and more importantly – the ALJ did not deem herself precluded from considering new evidence which might disturb the previous ALJ's finding. (See R&R 18 (noting that "[t]he ALJ considered the availability of new evidence acknowledging it could change the previous ALJ's determination of [Plaintiff's] functional abilities and limitations").) While, semantically speaking, the ALJ used the ill-chosen phrase that, "[t]his determination cannot be disturbed," her actions spoke to a different level of review. Immediately following this statement, the ALJ explicitly recognized that "the additional evidence of record received after this finding was initially made must be considered to determine whether there has been any change in the claimant's functional

9

abilities/limitations." (R. 24.) Thereafter, the substance of the ALJ's decision included extensive review, taking place over the course of several pages, of Plaintiff's multiple mental health evaluations, GAF scores, treatment, and statements that she had stopped taking mental health medications. (R. 24-26.) The ALJ then held that, "*[b]ased upon the evidence of record*, it is found that, due to her mental impairment, the claimant has suffered no restriction of activities of daily living, no difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace." (R. 27.) Later in the opinion, the ALJ reaffirmed that she had considered additional, post-remand evidence to determine whether there had been a change in Plaintiff's functional limitations or abilities. (R. 29)

In short, the ALJ unequivocally recognized her authority to alter the mild limitation in concentration, persistence, or pace based on any new evidence of record. Because her review of that record offered no basis for reaching a different conclusion, the ALJ chose to adopt the previously-found and judicially-upheld mental health limitation imposed in the 2003 administrative decision.[5] Plaintiff's repeated and lengthy argument as to inaccuracy of the ALJ's statement "cannot be disturbed" is therefore irrelevant.[6] Accordingly, the Court overrules Plaintiff's second Objection to

---

[5] Plaintiff cites to <u>Public Interest Research Group of NJ, Inc. v. Magnesium Elektron, Inc.</u>, 123 F.3d 111, 116-17 (3d Cir. 1997) for the proposition that a court may reconsider an issue decided earlier in the course of litigation where new evidence is available. The ALJ's statements and ensuing actions in this matter were entirely consistent with this holding. The ALJ recognized that a finding had previously been made as to Plaintiff's limitations from her mental impairment, but acknowledged that new evidence could affect the viability of that finding.

[6] Plaintiff offers multiple reasons for why a Court should not limit a Plaintiff to prosecution of specific claims on remand, how the ALJ's ruling is not consistent with the law of the case, how Defendant waived application of the law of the case, and why agency policy and other judicial and policy considerations require that an ALJ not be limited by a vacated decision. None of these arguments are pertinent to the present matter given the fact that the ALJ did not – despite her contrary phrasing – limit her review by previous findings.

the Report and Recommendation.

### C. Whether the ALJ Erred by Failing to Provide a Legally Acceptable Explanation for Rejecting Evidence Favorable to Plaintiff's Claim (Objection No. 4)

Plaintiff's final Objection concerns the ALJ's rejection of an opinion expressed by one of Plaintiff's vocational witnesses. Specifically, in her briefing before Judge Rice, Plaintiff argued that the ALJ erred by failing to address opinion evidence from Brian W. Hoerz, a vocational rehabilitation counsel with the Pennsylvania Office of Vocational Rehabilitation. In a letter, dated July 7, 2005, Mr. Hoerz opined that Plaintiff would require mental health and orthopedic treatment before being able to successfully return to work and that her physical difficulties precluded her from performing previous jobs. He further indicated that, once cleared for work, she would need a low-stress position that did not require extensive decision-making or thought-processing, and would require accommodations for her physical limitations. (R. 169.) The ALJ did not discuss this report in the 2007 opinion.

"There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004); see also Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008) (holding that an ALJ need not "cite all evidence a claimant presents, including evidence that is irrelevant to her case"). Only where the ALJ rejects conflicting probative evidence must the ALJ explain his findings and the reasoning for his conclusions. Walker v. Comm'r of Soc. Sec., 61 Fed. Appx. 787, 788-89 (3d Cir. 2003). Where the evidence at issue has not been rejected by the ALJ, or it is either not probative or not conflicting, the ALJ need not further discuss it. Id. at 789; see also Knox v. Astrue, No. CIV.A.09-1075, 2010 WL 1212561, at *7 (W.D. Pa. Mar. 26, 2010) ("Evidence obviously lacking in probative value can be implicitly rejected without explanation.").

While, in the interests of comprehensiveness, the ALJ could have mentioned Mr. Hoerz's letter, a remand for additional analysis of this letter is simply unwarranted on the face of the record. As Judge Rice correctly found in his R&R, Mr. Hoerz's letter did not – and could not – enunciate precisely what Plaintiff's impairments were. See 20 C.F.R. § 404.1513 (listing, as sources who can provide evidence to establish an impairment, licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). Accordingly, the basic premise upon which Mr. Hoerz rested his opinion is unclear. Moreover, Mr. Hoerz did not explain exactly what limitations Plaintiff had and what physical accommodations she would require to return to work. (R. 169.) Finally, at the 2007 administrative hearing, the ALJ explicitly asked testifying vocational expert Daniel Rapucci about the implications of Mr. Hoerz's letter. (R. 169, 388.) Mr. Rapucci remarked that, given the lack of specificity in that letter, as described above, he could not determine how it affected Plaintiff's ability to return to work. (R. 388.) In light of the letter's obvious lack of probative value, the Court deems the ALJ's refusal to address it to be an implicit rejection.

Plaintiff alternatively argues that, in dismissing this claim, the R&R engaged in an improper weighing of evidence by rejecting statements from one vocational expert based on statements from another. Such an argument is meritless. To the contrary, the R&R simply noted that Mr. Hoerz's letter was too unspecific to be of any probative value and that the lack of probity was bolstered by Mr. Rapucci's testimony. Nothing in that Report suggests that Rapucci's opinion was credited over Hoerz's opinion.

In short, the Court finds no reversible error in the ALJ's failure to mention Mr. Hoerz's letter. As the letter offered no relevant information that would assist the ALJ in rendering her

decision, she was not required to include a discussion of it in her opinion.

IV.     **CONCLUSION**

For all of the foregoing reasons, the Court finds no merit to any of Plaintiff's Objections. Plaintiff's counsel has conceded that these Objections were filed in large part because of his concern that, under the argument-counting rationale discussed in Williams v. Astrue, 600 F.3d 299 (3d Cir. 2010), Plaintiff's entitlement to attorney's fees under the Equal Access to Justice Act may be limited. (Pl.'s Objection 1-2.) In addition, Plaintiff suggests that, should the R&R stand as is, she will not receive appropriate *de novo* review on remand. (Id. at 2-3.) The Court does not deem either of these reasons compelling enough to alter the thorough and well-reasoned R&R issued by Judge Rice. As such, Plaintiff's Objections are denied, the R&R is adopted and approved in its entirety, and the case shall be remanded for further consideration on the bases identified in that R&R.